UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

*2012 SEP -4 PM 2: 12*

*U.S. DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS, FLORIDA*

WILLIAM GRAWBADGER,

                        Plaintiff,

vs.                                     Case No.   2:10-cv-528-FtM-SPC[1]

GEORGE    EMANOILIDIS,    in    his
individual and official capacity as
the Assistant Facility Administrator
for Operations at the Florida Civil
Commitment Center, and TIMOTHY BUDZ,
in his official capacity as Facility
Administrator at the Florida Civil
Commitment Center,

                        Defendants.

---

## OPINION AND ORDER

### I.

This matter comes before the Court upon review of the Motion for Summary Judgment filed on behalf of Defendants George Emanoilidis and Timothy Budz (Doc. #82, Mot. SJ) and supporting exhibit consisting of Plaintiff's complete deposition (Doc. #82-1, Def's Exh. A). Plaintiff filed a response in opposition (Doc. #83, Response) to the Motion and attached numerous supporting exhibits (Doc. #83-1, Pl's Exhs. 1-14), including in pertinent part: excerpts of Defendant Emanoilidis' deposition; incident reports dated October 9, 2008, November 18, 2008, May 18, 2009, and June 8, 2010; progress notes dated August 27 and September 28, 2009;

---

[1] Pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73, all parties consented to trial before the undersigned, and the district court approved. See Docs. #63, #67.

chronological record of health care dated December 21, 2009; Housing Assignment Forms; excerpts of Plaintiff's expert Michael Berg; excerpts for Timothy Budz' deposition; FCCC housing assignment policy; and Affidavit from Defendant Emanoilidis.[2] This matter is ripe for review.

## II.

Plaintiff William Grawbadger initiated this action by filing a Civil Rights Complaint Form (Doc. #1) pursuant to 42 U.S.C. § 1983 while civilly detained at the Florida Civil Commitment Center (hereinafter "FCCC").[3] On October 18, 2011, based on exceptional

---

[2]Many of Plaintiff's exhibits are filed *in camera*. Accordingly, the exhibits were not bates stamped. The Court will cite to the Exhibit number and attempt to reference a pinpoint cite.

[3]It is unclear whether Plaintiff is civilly detained, or civilly committed. Nevertheless, the Florida legislature enacted the Sexual Violent Predators Act, Fla. Stat. 394.910-.913, by which a person determined to be a sexually violent predator is required to be housed in a secure facility "for control, care, and treatment until such time as the person's mental abnormality or personality disorder has so changed that it is safe for the person to be at large." § 394.917(2). The Act was promulgated for the dual purpose "of providing mental health treatment to sexually violent predators and protecting the public from these individuals." Westerheide v. State, 831 So. 2d 93, 112 (Fla. 2002); Kansas v. Hendricks, 521 U.S. 346 (1997)(holding that the Kansas Sexually Violent Predator Act did not establish criminal proceedings, and involuntary confinement pursuant to the Act was not punitive). Civil commitment under the Act involves several steps. First, the Act requires a mental evaluation of any person who has committed a sexually violent offense and is scheduled for release from prison or involuntary confinement. See generally Fla. Stat. § 394.913. The evaluation is conducted by a multi-disciplinary team of mental health professionals who must determine whether the individual meets the definition of a "sexually violent predator." After the

(continued...)

-2-

circumstances presented in this case the Court appointed Plaintiff counsel.  See Doc. #55.  Appointed counsel filed an Amended Complaint (Doc. #70, Amended Complaint) on January 13, 2012, which is the operative pleading.  Defendants filed an Amended Answer on January 31, 2012 (Doc. #71).

The Amended Complaint names as Defendants: George Emanoilidis, the Assistant Facility Administrator for Operations at the FCCC, in his individual and official capacities; and, Timothy Budz, the Facility Administrator at the FCCC, in his official capacity. Amended Complaint at 1.  According to the Amended Complaint, Defendants' actions or inactions failed to protect Plaintiff from FCCC resident GB's[4] attacks that occurred on May 18, 2009, June 3, 2009, and June 8, 2010 at the FCCC.  Id. at 4.  As relief, Plaintiff seeks declaratory relief, permanent injunctive relief,

---

[3](...continued)
evaluation, the state attorney may file a petition with the circuit court alleging that the individual is a sexually violent predator subject to civil commitment under the Act.  Id.  If the judge determines that probable cause exists that the individual is a sexually violent predator, then the judge will order the individual to remain in custody.  Id. § 394.915.  Thereafter, a jury trial, or a bench trial if neither party requests a jury trial, will commence.  Id.  If the jury finds that the individual is a sexually violent predator by clear and convincing evidence, then the individual will be committed to the custody of the Department of Children and Family Services for "control, care, and treatment until such time as the person's mental abnormality or personality disorder has so changed that it is safe for the person to be at large."  Id. § 394.917.

[4]For consistency and privacy purposes, the Court will refer to the FCCC resident who attacked Plaintiff as "GB" or "resident GB."

monetary damages, and reimbursement of attorneys fees and costs under 28 U.S.C. § 1988.  Id. at 10.

### III.

The record sets forth the following undisputed facts which are construed in the light most favorable to the Plaintiff: Defendants Timothy Budz and George Emanoilidis work for GEO Group, Inc., who contracts with the Department of Children and Families to operate the FCCC.  Pl's Exh. 12, Depo. Budz at 5; Pl's Exh. 14, Aff. Emanoilidis at 1-2.  Defendants  Budz and Emanoidlis' official titles are "Facility Administrator" and "Assistant Facility Administrator," respectively. Pl's Exh. 12, Depo. Budz at 5; Pl's Exh. 14, Aff. Emanoilidis at 1-2.  Defendant Budz approved the FCCC'S housing policy in effect at the time of the incident.  Pl's Exh. 12, Depo.  Budz at 8.  Defendant Emanoilidis is responsible for housing assignments at the FCCC and serves as chair of the behavior management committee.  Pl's Exh. 14, Aff. Emanoilidis at 1-2; Pl's Exh. 1, Emanoilidis Depo. at 22.  Plaintiff and GB are residents at the FCCC.  Amended Complaint at 3-4; Mot. SJ at 5.

The  record  is  undisputed  that  GB  initiated  attacks  on Plaintiff on the following three dates at the FCCC: May 18, 2009, June 3, 2009, and twice on June 8, 2010.[5]  Id.; see also Pl's Exh.

_____

[5]Defendants attempt to categorize the first attack as "mutual combat," referencing Plaintiff's deposition.  Mot. SJ at 12. However, a review of Plaintiff's deposition and incident reports written by FCCC staff at the time of the incidents evidence that GB
(continued...)

7, Incident Reports.   Plaintiff sustained injuries after each of the incidents.   See generally Amended Complaint; Mot. SJ; Defs' Exh. A, Pl's Depo.; Response; Pl's Exh. 7, Incident Reports.   GB has been diagnosed with various mental health conditions, including hearing voices that tell him to hurt people.   GB also has a history of threatening and/or physically attacking other residents at the FCCC, including at least two incidents with other residents that pre-dated GB's first attack on Plaintiff.   See generally Pl's Exhs. 2-5; see also S-1, S-2.   The FCCC utilizes a computerized housing assignment program that is programmed to show only bed availability.   Pl's Exh. 12, Budz Depo. at 29; Pl's Exh. 14, Aff. Emanoilidis at 2.   The FCCC computer system only flags "major, life threatening incidents between residents."   Pl's Exh. 14, Aff. Emanoilidis at 2.

On May 18, 2009, GB attacked Plaintiff in the Peace Block of the Rivers housing unit.   Amended Complaint at 5; Mot. SJ at 5, 12; Pl's Exh. 7, Incident Reports; Pl's Exh. 8, Housing Assignment Sheets.   Plaintiff was sweeping the floor in the vestibule, which is a common area, and GB told Plaintiff that he could not use the broom and attempted to take the broom from him.   Mot. SJ at 10-11; Response at 8.   GB punched Plaintiff when he refused to give GB the broom and pulled out a homemade wooden weapon and stabbed Plaintiff

---

[5](...continued)
initiated the attack on Plaintiff.   Whether or not Plaintiff fought back does not present a genuine issue of material fact.

in the head. Mot. SJ at 11; Response at 8; Pl's Exh. 7, Incident Reports. In response, Plaintiff hit GB. Mot. SJ at 11; Defs' Exh. A, Pl's Depo. at 27-28; Pl's Exh. 7, Incident Reports. FCCC staff called a "code green" and security responded to the scene of the incident. Pl's Exh. 7, Incident Reports. After FCCC staff arrived, GB still tried to "go after" Plaintiff. Pl's Exh. 7, Incident Reports. After the incident, Defendant Emanoilidis placed Plaintiff and GB in the confinement area. Mot. SJ at 12; Defs' Exh. A, Pl's Depo. at 27.

The next incident occurred on June 3, 2009 in the Lake Block, which is a high security unit, also referred to as secured management.[6] Mot. SJ at 12; Amended Complaint at 4; Response at 8; Defs' Exh. A, Pl's Depo. at 35; Pl's Exh. 8, Housing Assignment Sheets. Plaintiff was talking to another resident while GB was watching TV in a common area of that specific dorm where Defendant Emanoilidis assigned both residents. Mot. SJ at 12; Response at 9; Defs' Exh. A, Pl's Depo. at 35, 40; Pl's Exh. 9, GB Depo. at 28. GB thought Plaintiff was standing too close to him. Mot. SJ at 12; Response at 9; Defs' Exh. A, Pl's Depo. at 36; Pl's Exh. 9, GB Depo. at 28-29. GB went to his room, put his shoes on, and

---

[6]It's unclear whether the confinement wing is in the Oceans Dorm, which is a pod on the Waters wing, or the Lakes Dorm. Mot. SJ at 13; Response at 8; Defs' Exh. A at 40-41. The Housing Assignment Sheets confirm that the two residents were housed in the Lake Block, Waters Unit, Top Floor. Pl's Exh. 8, Housing Forms. The fact is not material for purposes of this Order because both dorms are confinement dorms. Defs' Exh. A, Pl's Depo. at 41.

returned to attack Plaintiff.  Defs' Exh. A, Pl's Depo. at 36.
Plaintiff wrestled with GB "in order to minimize the amount of
damage either one of [them] sustained."  Mot. SJ at 12;  Defs' Exh.
A, Pl's Depo. at 36.  Plaintiff sustained injuries to his head and
face, and a cut on his finger from GB biting him.    Amended
Complaint at 4; Defs' Exh. A, Pl's Depo. at 38.

Plaintiff temporarily left the FCCC for reasons unrelated to
these assaults and returned on June 5, 2010. Amended Complaint at
4; Mot. SJ at 14; Defs' Exh. A. Pl's Depo. at 42. Upon Plaintiff's
return, Defendant Emanolidis assigned both Plaintiff and GB to the
Saturn Block in the Planets housing unit. Amended Complaint at 4;
Defs' Exh. A, Pl's Depo. at 44, 52; Pl's Exh. 8, Housing Assignment
sheet; Pl's Exh. 14, Aff. Emanoilidis at 2. On June 8, 2010, while
Plaintiff was walking outside of the library on his way to get a
lock for his property, which is not located in the dorm, GB
attacked Plaintiff with no warning and hit him on the face and
head. Amended Complaint at 4; Defs' Exh. A, Pl's Depo. at 50; Pl's
Exh. 10, Incident Report. Plaintiff did not hit GB back.  Defs'
Exh. A, Pl's Depo. at 51.  An FCCC staff person, TST Zamora,
entered through a door near the two residents and asked them what
was going on. Defs' Exh. A, Pl's Depo. at 51. The two residents
did not say anything and Zamora told the two residents to go their
separate ways. Id. Plaintiff continued walking to the area where
he could get a lock for his property. Plaintiff did not know that

he was assigned to the same dorm as GB. Id. at 52. Upon his return back to his assigned dorm, GB was in Plaintiff's room stacking his property in his room, screaming at Plaintiff that he had to leave the dorm. Id. at 52; Pl's Exh. 10, Incident Report. GB then ran toward Plaintiff and punched him. Defs' Exh. A, Pl's Depo. at 53; Pl's Exh. 10, Incident Report. The two residents fell to the ground and continued to fight. Defs' Exh. A, Pl's Depo. at 53. FCCC staff were located in the vestibule, not in the dorm, and did not see the incident. Id. Another resident escorted Plaintiff to where the staff were located and Plaintiff reported the incident to a lieutenant and a captain. Id. at 53-54; see also Pl's Exh. 10, Incident Report. In response, FCCC officials placed GB in secure management pending investigation of the incident and moved Plaintiff to "a different dorm at the other end." Defs' Exh. A, Pl's Depo. at 54; Pl's Exh. 10, Incident Report. As a result of the attack, Plaintiff suffered injuries to his face and head including bleeding from his right eye and ear. Amended Complaint at 5; Pl's Exh. 10, Incident Report. As of the date on the Amended Complaint, both residents reside back at the FCCC. Id.

The parties dispute the facts involving Defendant Emanoilidis' knowledge that GB was a "problem" resident. It is undisputed that Defendant Emanoilidis' roles at the FCCC included: (1) "Program Services Director," which gave him responsibility for housing assignments, and, (2) "Chair of Behavior Management Committee,"

which gave him a general sense of which residents were incompatible. Plaintiff also presents evidence in the form of reports to FCCC officials indicating that GB had threatened and physically assaulted other residents before GB's first attack on Plaintiff. Pl's Exhs 2-3. The record contains evidence that Defendant Emanoilidis was aware of GB's prior attacks on other residents, because he authorized the transfer for one of GB's roommates after the roommate expressed concern for his safety based on GB's continued threats of physical harm. Pl's Exh. 3, Incident Reports. Plaintiff also presents evidence that GB himself notified Defendant Emanoilidis and other FCCC staff about his propensity for violence. Pl's Exhs. 4-6.

With regard to whether Defendant Emanoilidis subjectively knew that GB posed a serious risk of harm to Plaintiff, the record contains evidence that Defendant Emanoilidis knew about the initial attack on May 18, 2009 based on incident report forms and authorized Plaintiff and GB's housing relocation to secured management. Pl's Exh. 7, Incident Reports and Mental Health Emergency Nursing Form. Moreover, it is undisputed that prior to the June 2010 attack on Plaintiff, GB attacked Plaintiff on May 18, 2009, and June 3, 2009. Supra at 4-5. Defendant Emanoilidis, however, contends that in June 2010 he did not remember that Plaintiff had a problem with GB at the time he made Plaintiff's bed assignment to the same dorm as GB. Pl's Exh. 14, Aff. Emanoilidis

at 2. Defense counsel submits that the only notice Emanoilidis received of any issue between the Plaintiff and GB was an "alleged communication form" that Plaintiff states he submitted. Mot. SJ at 22; Defs' Exh. A, Pl. Depo. at 48, 66. Defendant Emanoilidis, however, testifies that he does not ever remember seeing any resident communication form from Plaintiff and no copy of the form exists. Pl's Exh. 1, Depo. Emanoilidis at 41.

The parties also dispute whether Defendant Emanoilidis' decision to continue to assign the two residents to the same housing assignment was reasonable. Defendant Emanoilidis argues that his response was reasonable. Mot. SJ at 23. Defendant points to the non-existent June 2010 resident communication form and argues that if he offered Plaintiff protective custody, then his response was reasonable. Id. As previously mentioned, the record contains evidence that Emanolidis never remembered seeing any resident communication form from Plaintiff, that no form exists, and no evidence exists that Emanoilidis suggested that Plaintiff move to protective custody. Response at 10; Pl's Exh. 1, Depo. Emanoilidis at 40-41. Plaintiff also submits opinion testimony from his expert that Defendants' actions were unreasonable because Defendants knew that GB's behavior was erratic and that he would hurt people, including Plaintiff, but continued to house them in the same blocks and units.

## IV.

Defendants move for summary judgment and argue *inter alia* that they were not subjectively aware of a known risk to Plaintiff by GB because Plaintiff never made any statements, or filed any resident communication forms before June 2010, advising Defendants that he was in fear of GB. Mot. SJ at 9. Defendants Emanoilidis and Budz aver that the June 2010 resident communication form is the only notice from Plaintiff that he feared GB did not want to be housed near him. Defendants also argue that Plaintiff is not entitled to permanent injunctive relief because he has not established a violation of a constitutional right. Id. at 27. In the alternative, Defendants assert that they are entitled to civil immunity in their official and individual capacities pursuant to Florida Statute § 349.923 because their actions were taken in "good faith." Id. at 28.

In Response, Plaintiff points out that Defendants appear to concede objective risk of serious harm and injury to Plaintiff because they only raise an issue with regard to Defendants' subjective knowledge. Response at 5. Plaintiff submits that case law establishes that a plaintiff's failure to give advance notice of a concern that someone will harm him is not dispositive as to the element of subjective knowledge. Id. at 3. Thus, Plaintiff argues that the record contains a genuine dispute of material fact as to Defendants' subjective knowledge. Id. at 5. Plaintiff also

argues that state statutory immunity is not available when a defendant is being sued based on a federal statute or claim. Id.

"Summary judgment is appropriate only if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Moton v. Cowart, 631 F.3d 1337, 1341 (11th Cir. 2011)(internal quotations and citations omitted). See also, Fed. R. Civ. P. 56(c)(2). "The moving party may meet its burden to show that there are no genuine issues of material fact by demonstrating that there is a lack of evidence to support the essential elements that the non-moving party must prove at trial." Moton, 631 F.3d at 1341 (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). The standard for creating a genuine dispute of fact requires the court to "make all *reasonable* inferences in favor of the party opposing summary judgment," Chapman v. AI Transp., 229 F.3d 1012, 1023 (11th Cir. 2000)(en banc)(emphasis added), not to make all *possible* inferences in the non-moving party's favor. To avoid the entry of summary judgment, a party faced with a properly supported summary judgment motion "bears the burden of persuasion" and must come forward with extrinsic evidence, *i.e.*, affidavits, depositions, answers to interrogatories, and/or admissions, and "set forth specific facts showing that there is a genuine issue for trial." Beard v. Banks, 548 U.S. 521, 529 (2006)(citations omitted); Celotex, 477 U.S. at 322; Hilburn v. Murata Elec. N. America, Inc., 181 F.3d 1220, 1225

-12-

(11th Cir. 1999). If there is a conflict in the evidence, the non-moving party's evidence is to be believed and "all justifiable inferences" must be drawn in favor of the non-moving party. Beard, 548 U.S. at 529 (citations omitted); Shotz v. City of Plantation, 344 F.3d 1161, 1164 (11th Cir. 2003). In doing so, the Court "must distinguish between evidence of disputed facts and disputed matters of professional judgment. In respect to the latter, our inferences must accord deference to the views of prison authorities. [] Unless a prisoner can point to sufficient evidence regarding such issues of judgment to allow him to prevail on the merits, he cannot prevail at the summary judgment stage." Beard, 548 U.S. at 529-30. Also, "[a] court need not permit a case to go to a jury, however, when the inferences that are drawn from the evidence, and upon which the non-movant relies, are 'implausible.'" Cuesta v. School Bd. of Miami-Dade County, 285 F.3d 962, 970 (11th Cir. 2002) (citations omitted). Nor are conclusory allegations based on subjective beliefs sufficient to create a genuine issue of material fact. Leigh v. Warner Bros., Inc., 212 F.3d 1210, 1217 (11th Cir. 2000). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." Scott v. Harris, 550 U.S. 372, 380 (2007).

**V.**

## A.  Section 1983

Title 42 U.S.C. § 1983 imposes liability on anyone who, under color of state law, deprives a person "of any rights, privileges, or immunities secured by the Constitution and laws."  To state a claim under 42 U.S.C. § 1983, Plaintiff must allege that: (1) Defendants deprived him of a right secured under the United States Constitution or federal law, and (2) such deprivation occurred under color of state law.  Arrington v. Cobb County, 139 F.3d 865, 872 (11th Cir. 1998); U.S. Steel, LLC v. Tieco, Inc., 261 F.3d 1275, 1288 (11th Cir. 2001).

The Supreme Court has soundly rejected the possibility of *respondeat superior* as a basis of liability in § 1983 actions. Monell v. Dep't of Soc. Serv., 436 U.S. 659, 690-692 (1978). Instead, supervisory liability can be imposed under § 1983 "either when the supervisor personally participates in the alleged constitutional violation or when there is a causal connection between the actions of the supervising official and the alleged constitutional deprivation." Brown v. Crawford, 906 F.2d 667, 671 (11th Cir. 1990); cert. denied, 500 U.S. 933 (1991).  Absent personal participation by a defendant, a plaintiff must show an affirmative causal connection between the defendant's acts and the alleged constitutional deprivation.  Harris v. Ostrout, 65 F.3d 912, 917 (11th Cir. 1995).  The causal connection can be

-14-

established "when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so [,]" or when a custom or policy of the supervisor results in deliberate indifference to constitutional rights. Cottone v. Jenne, 326 F.3d 1352, 1360 (11th Cir. 2003)(quoting Gonzalez v. Reno, 325 F.3d 1228, 1234 (11th Cir. 2003)). "The deprivations that constitute widespread abuse sufficient to notify the supervising official must be obvious, flagrant, rampant and of continued duration, rather than isolated occurrences." Brown, 906 F.2d at 671. Alternatively, facts supporting an inference that the supervisor directed the subordinates to act unlawfully or knew that they would do so and failed to stop them establishes a causal connection. Cottone, 326 F.3d at 1360 (quoting Gonzalez, 325 F.3d at 1234) (remaining citations omitted).

**B.  Fourteenth Amendment**

Plaintiff alleges a violation of his rights protected under the Fourteenth Amendment of the United States Constitution stemming from Defendants failure to protect him from resident GB's attacks. See generally Amended Complaint. Under Youngberg v. Romeo, 457 U.S. 307, the Due Process Clause of the Fourteenth Amendment ensures the involuntarily civilly committed a liberty interest in reasonably safe conditions of confinement, freedom from unreasonably bodily restrains, and such minimally adequate training

-15-

as might be required to ensure safety and freedom from restraint. Id. at 322.  The rights of the involuntarily civilly committed are "at least as extensive" as the Eighth Amendment rights of the criminally institutionalized.  Dolihite v. Maughon, 74 F.3d 1027, 1041 (11th Cir. 1996); Lavender v. Kearney, 206 F. App'x 860, 863 (11th Cir. 2006)(unpublished).  Therefore, the case law that has developed under the Eighth Amendment sets forth the contours of the due process rights of the civilly committed.  Dolihite, 74 F.3d at 1041.  Indeed, FCCC staff have a duty to protect the civilly detained from violence at the hands of the other civilly detained residents.  See Farmer v. Brennan, 511 U.S. 825, 833 (1994)(applying analysis in a prison context); Brown v. Budz, 398 F.3d 904, 909 (7th Cir. 2005)(applying Farmer analysis to a civil commitment facility); Nelson v. Shuffman, 603 F.3d 439, 446 (8th Cir. 2010)(same).  However, not every injury "translates into constitutional liability."  Farmer, 511 U.S. at 834.  In Carter v. Galloway, 352 F.3d 1346 (11th Cir. 2003) the court summarized the relevant principles:

> A prison official's deliberate indifference to a substantial risk of serious harm to an inmate violates the Eighth Amendment.  Prison officials have a duty to protect prisoners from violence at the hands of other prisoners.  It is not, however, every injury suffered by one inmate at the hands of another that translates into a constitutional liability for prison officials responsible for the victim's safety.  An Eighth Amendment violation will occur when a substantial risk of serious harm, of which the official is subjectively aware, exists and the official does not respond reasonably to the risk. To survive summary judgment on his section 1983, Eighth

Amendment claim, plaintiff was required to produce
sufficient evidence of (1) a substantial risk of serious
harm; (2) the defendants' deliberate indifference to that
risk; and (3) causation.

Id. at 1349 (citations and quotations omitted).

In other words, "for an involuntarily civilly-committed
plaintiff to establish a § 1983 claim for violation of his due
process rights, he must show that state officials were deliberately
indifferent to a substantial risk to his safety." Lavender, 206 F.
App'x at 863. A plaintiff must demonstrate that the defendant was
aware of specific facts from which an inference could be drawn that
a substantial risk of serious harm exists and that the prison
official drew that inference. Purcell v. Toombs County, 400 F.3d
1313, 1319-20 (11th Cir. 2005); Carter, 352 F.3d 1346 at 1349. To
show that an official had subjective knowledge, the court is to
inquire whether the defendant was aware of a "particularized threat
or fear felt by [the plaintiff]." Carter, 352 F.3d at 1350. "A
plaintiff's failure to give advance notice to prison officials of
a specific threat or of his fear of an inmate is relevant to this
inquiry, Carter, 352 F.3d at 1349-50, though it is not dispositive,
see Farmer, 511 U.S. at 848." Moulds v. Bullard, 345 F. App'x 387
(11th Cir. 2009)(unpublished). Indeed, "[d]eliberate indifference
can be predicated upon knowledge of a victim's particular
vulnerability (though the identity of the ultimate assailant not
known in advance of attack), or, in the alternative, an assailant's
predatory nature (though the identity of the ultimate victim not

known in advance of attack)." <u>Brown</u>, 398 F.3d at 915.   Whether an official had requisite knowledge is a question of fact that may be demonstrated by circumstantial evidence.   <u>Farmer</u>, 511 U.S. at 842. Consequently, evidence of past attacks which were "longstanding, pervasive, well-documented, or expressly noted by [ ] officials in the past" may be sufficient to find that the official had actual knowledge.   <u>Id.</u>   However, general knowledge that a particular inmate is a problem inmate with a well-documented history of prison disobedience who is prone to violence is not sufficient.   <u>Carter</u>, 352 F.3d at 1349.   <u>See also</u> <u>McBride v. Rivers</u>, 170 F. App'x 648 (11th Cir. 2006)(unpublished).

In this case, Plaintiff has demonstrated a genuine issue of material fact to preclude entry of summary judgment on his failure to protect claim against Defendant Emanoilidis in his individual and official capacities and Defendant Budz in his official capacity.   It is undisputed that GB initiated four attacks on Plaintiff on three separate dates: May 18, 2009, June 3, 2009, and on June 8, 2010.   Plaintiff sustained injuries each time.   At a minimum, Plaintiff presents evidence that the June 8, 2010 attack, which occurred in Planets housing unit, Saturn block, happened because Defendant Emanoilidis housed Plaintiff and GB together using the FCCC computer system.   Arguably, the record also contains evidence that the June 3, 2009 attack, which occurred in a common area of the dorm in which the residents were assigned, was also

caused by Defendant Emanoilidis' housing assignment. GB has been diagnosed with various mental health conditions and has a history of incidents involving threats and/or physical attacks on other residents at the FCCC, including at least two incidents with other residents that pre-date GB's first attack on Plaintiff. Additionally, the record contains evidence that Defendant Emanoilidis subjectively knew that GB posed a significant risk of harm to Plaintiff, but continued to house the two residents in the same dorm. Thus, the record contains sufficient evidence that a reasonable trier of fact could find that Defendant Emanoilidis acted with deliberate indifference to Plaintiff's safety and return a verdict in favor of Plaintiff. Accordingly, Defendants' Motion for Summary Judgment is denied as to the failure to protect claims and Plaintiff's request for injunctive relief.

### B. Official Capacity Claims

Turning to Plaintiff's claims against the Defendants in their official capacities, this action is effectively against the entity that the Defendants represent, which is GEO Group, Inc. To impose liability on a private corporation performing State functions, a plaintiff must establish the same elements as those applied to determine municipal or local government liability. Buckner v. Toro, 116 F.3d 450, 452 (11th Cir. 1997). Under Monell, a plaintiff must establish that an official policy or custom of the municipality was the "moving force" behind the alleged

-19-

constitutional deprivation. <u>Monell v. Dep't of Soc. Serv.</u>, 436 U.S. 658, 693-694 (1978). "A policy is a decision that is officially adopted by the municipality, or created by an official of such rank that he or she could be said to be acting on behalf of the municipality." <u>Goebert v. Lee County</u>, 510 F.3d 1312, 1332 (11th Cir. 2007)(citing <u>Sewell v. Town of Lake Hamilton</u>, 117 F.3d 488, 489 (11th Cir. 1997)). "A custom is an unwritten practice that is applied consistently enough to have the same effect as a policy with the force of law." <u>Goebert</u>, 510 F.3d at 1332 (citing <u>St. Louis v. Praprotnik</u>, 485 U.S. 112, 127 (1998)). "Demonstrating a policy or custom requires "show[ing] a persistent and wide-spread practice." <u>Depew v. St. Marys</u>, 787 F.2d 1496, 1499 (11th Cir. 1986).

Plaintiff challenges the FCCC's housing assignment practices and policies and argues these policies and practices were the moving force that caused his injuries. Specifically, Plaintiff argues that the housing policy at the FCCC does not require adequate consideration of a resident's potential risk when determining housing assignments. The record contains undisputed evidence that the housing policies and practices that were in effect at the FCCC were adopted by Defendant Budz and implemented by Defendant Emanoilidis. Plaintiff presents evidence that the FCCC utilizes a computerized housing assignment program that is programmed to show only bed availability and only flags "major,

life threatening incidents between residents." Plaintiff presents additional evidence that Defendant Emanolidis' practice is to not review residents' records when a resident is due for readmission to a housing assignment at the FCCC, despite having access to such records.   Pl's Exh. 1, Depo. Emanoilidis at 32.   Additionally, Plaintiff's expert opines that the cause of Plaintiff's injuries by GB were attributed in part to the computerized housing system. Response at 12; Pl's Exh. 14, Expert Report.   Defendants dispute Plaintiff's contentions and argue that the housing assignment practices and policies did not cause Plaintiff's injuries because GB's attacks on Plaintiff on May 18, 2009, June 3, 2009, and the first June 2010 attack occurred in common areas unrelated to the residents' housing assignment.   Mot. SJ at 12, 14, 21.   Plaintiff, however, presents evidence suggesting that the housing assignment policies was arguably the moving force behind the June 3, 2009 attack because that common area was unique to the residents' housing assignment.   And, neither party disputes the second June 2010 attack occurred where Plaintiff and GB were commonly housed. Accordingly, the record contains a genuine dispute of material fact as to whether the housing policy contributed to the attacks upon Plaintiff because these incidents arguably occurred where the residents were commonly housed.    Accordingly, the Defendants' Motion for Summary Judgment is denied with respect to the official capacity claims against Defendants Emanoilidis and Budz.

### B. Civil Immunity Protection- Florida Statute § 394.923

Defendants submit that Fla. Stat. § 394.923 provides "statutory immunity from liability for good faith actions of those involved with the care and treatment of the involuntarily [civilly] detained persons under the Jimmy Ryce Act." Mot. SJ. at 28. Florida Statute § 394.923 (2002) provides:

> The agency with jurisdiction and its officers and employees; the department and its officers and employees; members of the multi disciplinary team; the state attorney and the state attorney's employees; the Department of Legal Affairs and its officers and employees; and those involved in the evaluation, care, and treatment of sexually violent persons committed under this part are immune from any civil liability for good faith conduct under this part.

Id.

In response, Plaintiff argues that under the Supremacy Clause, a state statute cannot protect defendants from a cause of action grounded on a federal statute or claim. Response at 14 (citing Martinez v. California, 444 U.S. 277, 284 (1980)). Thus, Plaintiff submits state statutory immunity is not applicable in this case because it is a federal cause of action brought under a federal statute. The Court agrees with Plaintiff that a state statute cannot provide immunity in this federal cause of action brought under a federal statute. Howlett v. Rose, 496 U.S. 356, 383 (1990).

ACCORDINGLY, it is hereby

**ORDERED:**

-22-

.

Defendants' Motion for Summary Judgment (Doc. #82) is **DENIED** in its entirety.

**DONE AND ORDERED** at Fort Myers, Florida, on this ____ day of September, 2012.

SHERI POLSTER CHAPPELL
UNITED STATES MAGISTRATE JUDGE

SA: alj
Copies: All Parties of Record

-23-